Peabody, Appellant, *v.* Tucker.

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Henry T. Reath*, with him *Jane D. Elliott, Irving R. M. Panzer, Gerald S. Segal*, and *Duane, Morris & Heckscher*, for appellant.

*Lawrence T. Hoyle, Jr.*, Deputy Attorney General, with him *Thomas J. Oravetz* and *Edward J. Weintraub*, Deputy Attorney Generals, and *J. Shane Creamer*, Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1972:

Appellant Endicott Peabody filed a complaint in mandamus in the Commonwealth Court requesting that the Secretary of the Commonwealth be ordered to certify his name for inclusion on the official ballot of the Democratic Party as a candidate for Vice-President of the United States at the primary to be held on April 25, 1972. The Commonwealth Court, after hearing, entered judgment against appellant. Appellant thereupon appealed to this Court. On March 20, 1972, this Court issued an order affirming the judgment of the Commonwealth Court, and indicating that an opinion would follow.[1]

---

[1] Mr. Chief Justice JONES and Mr. Justice EAGEN dissented from our March 20, 1972, order.

Though the Pennsylvania Election Code[2] specifically establishes a preferential primary for candidates for party nominations for the office of President of the United States, the Election Code, as appellant concedes,[3] makes no specific provision for a preferential primary for candidates for the office of Vice-President of the United States. Nevertheless, appellant contends that the Pennsylvania Election Code can and should be construed to provide for a Vice-Presidential preferential primary. We disagree. We believe that the Legislature did not intend to establish a Vice-Presidential preferential primary, and we recognize that we cannot substitute our judgment on this matter for that of the Legislature. Accordingly, we affirm the judgment of the Commonwealth Court.

In our view Section 902 of the Election Code[4] clearly indicates that the Legislature did not intend to provide for a Vice-Presidential primary. That section expressly provides for a Presidential preferential primary, but makes no mention of a Vice-Presidential primary. The section states:

"CANDIDATES TO BE NOMINATED AND PARTY OFFICERS TO BE ELECTED AT PRIMARIES.

"All candidates of political parties, as defined in Section 801 of this act, for the offices of United States Senator, Representative in Congress and for all other elective public offices within this State, except that of presidential electors, shall be nominated, and party delegates and alternate delegates, committeemen and officers who, under the provisions of Article VIII of this act or under the party rules, are required to be

---

[2] Act of June 3, 1937, P. L. 1333, §§1 et seq., as amended, 25 P.S. §§2600 et seq.

[3] Brief for Appellant at 8.

[4] Act of June 3, 1937, P. L. 1333, Art. IX, §902, as amended, 25 P.S. §2862.

elected by the party electors, shall be elected at primaries held in accordance with the provisions of this act, except as otherwise provided in this act. *In the years when candidates for the office of President of the United States are to be nominated, every registered and enrolled member of a political party shall have the opportunity at the Spring primary in such years to vote his preference for one person to be the candidate of his political party for President."* (Emphasis added.) We cannot believe that the Legislature, having expressly established a Presidential preferential primary, intended by the same act to establish a Vice-Presidential preferential primary by implication. Moreover, at least six other sections of the Election Code—sections dealing with notice to the county boards of offices for which nominations are to be made,[5] filing of nominating petitions,[6] affidavits of candidates,[7] number of signers required on nominating petitions,[8] filing fees,[9] and determination of victorious candidates[10]—the Legislature expressly refers to candidates for party nominations for President, but says nothing about Vice-Presidential candidates.

Despite the Code's total lack of any reference to a Vice-Presidential primary, and despite Section 902's express provision for a Presidential primary, appellant argues that a legislative intent to establish a Vice-Presidential primary is evidenced by Section 907 of the Election Code.[11] Section 907 provides that upon the filing of proper nominating petitions with the Secretary of the Commonwealth "[t]he names of candidates

[5] Id. §905, 25 P.S. §2865.
[6] Id. §907, 25 P.S. §2867.
[7] Id. §910, 25 P.S. §2870.
[8] Id. §912, 25 P.S. §2872.
[9] Id. §913, 25 P.S. §2873.
[10] Id. §922, 25 P.S. §2882.
[11] Id. §907, 25 P.S. §2867.

for nomination as President of the United States, *and the names of all other candidates for party nominations,* . . . shall be printed upon the official primary ballots. . . .". (Emphasis added.) Appellant contends that since he is a candidate for the Democratic nomination for Vice-President, he is a "candidate for party nomination" within the meaning of Section 907, and his name must be placed upon the official primary ballot of the Democratic party as a candidate for that office. We disagree.

Section 907 was designed merely to require the Secretary of the Commonwealth to place on the ballot the names of all candidates who have filed proper nominating petitions. Section 907 was obviously not intended to specify those elective offices or positions that are to appear on the primary ballot. For example, following appellant's interpretation of Section 907, a candidate for the Democratic nomination for the Governorship of Texas could have his name placed upon the Pennsylvania primary ballot if he presented a proper nominating petition. For such a candidate is surely a "candidate for party nomination".

We agree with the Commonwealth Court that Section 907 must be read in connection with Section 902. It is Section 902 that specifies which offices or elective positions are to appear on the primary ballot. Section 907 was intended only to establish the obligation of the Secretary to place on the ballot the names of all candidates who file proper nominating petitions, and cannot be interpreted to expand Section 902's careful enumeration of the contests that are to appear on the primary ballot.

Section 902 provides for only one preferential primary—a Presidential preferential primary. According to Section 902 the only other candidates for party nomination who can appear on the ballot are candi-

dates for party nominations which will be decided by the primary election—candidates "for the offices of United States Senator, Representative in Congress and for all other elective public offices within this state. . . ."[12] Therefore we agree with the Commonwealth Court that since Section 907 specifically provides for acceptance of nominating petitions for Presidential candidates, the phrase "other candidates for party nominations" contained in Section 907 must be read to include only candidates for office "for which candidates are to be nominated" at the primary.[13] Since Vice-Presidential candidates are nominated by national conventions rather than state primaries, appellant is obviously not a candidate for an office "for which candidates are to be nominated" at the April 25th primary. Accordingly we conclude that Section 907 did not oblige or permit the Secretary to certify appellant's name for inclusion on the ballot.

Appellant also attempts to support his argument that the Legislature intended to establish a Vice-Presidential primary by pointing to Section 903 of the Election Code.[14] That section provides: "It shall be the duty of the Secretary of the Commonwealth, prior to each primary, to ascertain the various national and State offices to be filled at the ensuing November election, and for which candidates are to be nominated at such primary, *and otherwise*, in accordance with the provisions of this act." (Emphasis added.)

Appellant argues that this section requires the Secretary to ascertain not only the offices "for which candidates are to be nominated" at the Pennsylvania primary, but also to ascertain the offices for which candidates will be nominated by other methods—for example,

---

[12] Id. §902, 25 P.S. §2862.

[13] Cf. Id. §903, 25 P.S. §2863.

[14] Id.

in his case, by national convention. From this duty of ascertainment, appellant would have us find a legislative intent to establish a Vice-Presidential primary.

We are confident that the Legislature did not intend to establish a Vice-Presidential preferential primary when it included the phrase "and otherwise" in Section 903. All Section 903 sought to accomplish was to make it the duty of the Secretary of the Commonwealth to set in motion a process by which the voters of the Commonwealth, through the county boards of elections, are informed of the contests that will appear on the primary ballot.[15] Section 903 was not intended to specify the contests that are to appear on the Pennsylvania primary ballot. To conclude that Section 903 indicates a legislative intent to establish a Vice-Presidential preferential primary would be to ignore the clear direction to the contrary of Section 902 and other sections of the Election Code,[16] and would be judicial legislating of the most obvious order.

Appellant makes an appealing argument for increased citizen participation in the selection of nominees for the Vice-Presidency of the United States through a Vice-Presidential preferential primary. But in light of the fact that the Legislature has exclusive control over the preferential contests that will appear on the Pennsylvania primary ballot, and in view of the Legislature's decision to provide only for a Presidential primary, this Court may not, under the guise of construction or otherwise, intrude upon the exclusive province of the Legislature.[17]

---

[15] See Id. §§905-06, 25 P.S. §§2865-66.

[16] See sections cited in footnotes 5 through 10, supra.

[17] By way of comparison it is useful to note that when the New Hampshire Legislature established that state's Vice-Presidential preferential primary, they did so explicitly. New Hampshire R.S.A. Chapt. 58, §58-2 provides: "VOTING PREFERENCE. Every qualifed voter, eligible to vote in the election of his party

Accordingly the judgment of the Commonwealth Court is affirmed.

Mr. Chief Justice JONES and Mr. Justice EAGEN dissent.

as provided in chapter 57, shall have opportunity at such presidential preference primary to vote his preference, on the ballot of his party, for his choice for one person to be the candidate of his political party for president of the United States and one person to be the candidate of his political party for vice president of the United States, either by writing the names of such persons in blank spaces to be left in said ballot for that purpose, or by marking a cross opposite the printed names of the persons of his choice, as in the case of other primaries."